Russell Blain, Tampa, Fla., for debtors.

Charles Ketchry, Tampa, Fla., for Couringtons.

---

**In the Matter of OMNI CONTRACTING COMPANY, INC., Debtor(s).**

**Bankruptcy No. 86–3081.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 4, 1987.

ORDER ON GERALD COURINGTON AND LOUISE COURINGTON'S THIRD MOTION FOR ADEQUATE PROTECTION OR FOR RELIEF FROM STAY

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration is a Third Motion for Adequate Protection or for Relief From Stay filed by Gerald Courington and Louise Courington (Couringtons), creditors in the above-captioned case. The Couringtons' First Motion for Relief From Stay was sought to be settled by the parties, but this Court disapproved the proposed settlement. The Second Motion for Relief From Stay was denied without prejudice because of insufficient service of process. In due course, this Court held a final evidentiary hearing on Couringtons' Third Motion for Adequate Protection or for Relief From Stay. The facts relevant and germane to a resolution of this controversy, as they appear from the record, are as follows:

Gerald Courington (Courington), at the time relevant, was the sole stockholder of Omni Contracting Company, Inc. (Omni), the Debtor in the above-captioned case. On September 5, 1985, Courington sold 1200 shares of common stock, fifteen (15) shares of Omni common stock to Sybol Reid and 1,185 shares of common stock back to Omni (Exh. # 5). Courington testified that he received $50,000.00 as a cash downpayment, a $200,000.00 promissory note (Exh. # 1), and a $100,000.00 promissory note (Exh. # 2). Courington testified that the intended purchase price was $400,000.00, however, there is no evidence in this record to support the claim of an additional $50,000.00 of consideration agreed

upon. The security interest was properly perfected by recordation of the UCC–1 Financing Statement (Exh. # 4). In December of 1985, Courington received a $50,000.00 down payment and an additional $35,000.00 in March of 1986.

Shortly after the sale of the controlling interest in Omni, disputes arose between the parties. In order to resolve the disputes, additional documents were executed on April 11, 1986, which modified the September 5, 1985 transaction. The "Amended Sale and Purchase of Corporate Stock Agreement" (Exh. # 5) restated the purchase price to be $395,000.00 for the common stock purchased by Omni from Courington and an additional $5,000.00 for fifteen (15) shares of Omni common stock purchased by Sybol Reid from Courington. The Amended Agreement provides for the purchase of the Sybol Reid shares by a payment of $5,000.00 in cash at closing and for the purchase of the redemption shares of Omni common stock by delivery of a $350,000.00 promissory note (Exh. # 6), and payment of $45,000.00 in cash at closing. In fact, two promissory notes were executed; one in the principal amount of $350,000.00 (Exh. # 6) and the other in the principal amount of $5,669.27 (Exh.# 7). It is without dispute that no cash downpayment of $45,000.00 was ever made. The Amended Agreement (Exh. # 5) recited that a principal reduction payment of $50,000.00 was to be made on or before December 31, 1985, and an additional $35,000.00 principal reduction on or before April 11, 1986.

There is disagreement between the parties as to the amount of the purchase price and the outstanding balance owed to Courington. This Court, however, is satisfied from the documents executed on April 11, 1986, that the Omni stock purchase was redrafted as a $400,000.00 transaction, toward which the original $50,000.00 paid in September of 1985, was credited against the $45,000.00 cash payment required at closing, the $50,000.00 paid in December of 1985 was credited toward the payment required in the Amended Agreement to be made on December 31, 1985, and the $35,000.00 paid in March of 1986 was credited toward the payment required in the

Amended Agreement to be made on or before April 11, 1986. Thus, $135,000.00 in principal was paid by Omni to Courington which left a principal balance owing to Courington after April 11, 1986 of $265,000.00.

This leaves for consideration the amount of interest which has accrued on the unpaid balance in order to compute the total amount of indebtedness owed to Courington by Omni. Pursuant to the Amended Agreement (Exh. # 5), interest accrued at the rate of ten percent (10%) from April 1, 1986, at which time the principal indebtedness was $265,000.00. The principal and interest as of the final evidentiary hearing on January 24, 1987 totaled $280,707.40. This sum is computed as follows:

| | |
|---|---|
| Total Principal Indebtedness: | $400,000.00 |
| (i) September payment | (50,000.00) |
| (ii) December payment | (50,000.00) |
| (iii) March payment | (35,000.00) |
| Total Outstanding Principal: | $265,000.00 |
| Interest on Debt: | 21,707.40 |
| Adequate Protection Payments: | (6,000.00) |
| Total Indebtedness: | $280,707.40 |

The per diem interest is accruing at the rate of ten percent (10%) on a principal indebtedness of $265,000.00, or in other words, at the rate of $72.60 per day.

As noted earlier, the unpaid portion of the purchase price in the sum of $265,000.00 was secured by virtue of an Amended Security Agreement (Exh. # 8) and perfected by a UCC–1 Financing Statement (Exh. # 9). The Security Agreement encumbered the collateral enumerated in the original security agreement of September 5, 1985 (Exh. # 3), and expanded the collateral description to include the following:

All accounts, contract rights, chattel paper, instruments, and other rights to receive payment of moneys, now existing or hereafter acquired by the Debtor (hereinafter referred to as the "Receivables") and all other contract rights, general intangibles and other intangible property of any kind, now owned or hereafter acquired by the Debtor (hereinafter referred to as "Contract Rights") including without limitation (sic) its rights under the Sale of Assets Agreement. In

addition to the grant of the security interest herein, the Debtor hereby assigns the Receivables and Contract Rights to the Secured Party.

This Court has previously conducted three evidentiary hearings concerning Omni's right to use cash collateral and the appropriate adequate protection for the Couringtons if Omni was authorized to use the proceeds of its accounts receivable. After two hearings on these matters, this Court entered on December 4, 1986, its Order Authorizing Use of Cash Collateral and authorized Omni to use the cash collateral provided it furnishes the following adequate protection to the Couringtons:

(1) Periodic payments of $3,000.00 per month:

(2) A post-petition security interest in favor of the Couringtons, in Omni's accounts receivable to the extent and in such amount as such security interest existed at the time of filing the Chapter 11 Petition.

At the January 24 hearing, a specified list of equipment from a UCC–1 Financing Statement executed by Omni in favor of the Couringtons was introduced into evidence (Exh. # 10). The present matter for consideration is Omni's right to use the equipment on which the Couringtons have a security interest, and if authorized what would be the proper measure of adequate protection of the interest of the Couringtons in the collateral.

The sole question with regard to adequate protection is whether the $3,000.00 monthly adequate protection being paid by Omni sufficiently protects the Couringtons' security interest in the equipment.

The record in this matter is at best inconclusive on the amount of depreciation on the equipment in question. Mr. Nanz, expert for Courington, testified as to rates of depreciation of the equipment, however this Court finds his estimation unpersuasive. The rate of depreciation on the equipment claimed by this witness was based on the proposition that this is the rate lessors use when they compute the rent for similar equipment. This Court is satisfied this is not the proper rate of depreciation. Mr.

Reid, expert for Omni, testified that the equipment would not depreciate at all with proper maintenance. While the testimony on the proper rate of depreciation leaves much to be desired, this Court finds the testimony of Mr. Reid to be more reliable than that of Mr. Nanz.

The Couringtons seek a minimum of at least $7,500.00 for adequate protection on the equipment only, in addition to the monthly $3,000.00 payments currently being paid by Omni. Mr. Reid testified that prior to the Chapter 11 Petition, Omni was spending from $25,000.00 to $50,000.00 per month on maintenance on the equipment, but these figures also included payments for fuel. Mr. Reid clarified these figures and testified that for straight maintenance, Omni spent $15,000.00 to $20,000.00 pre-petition per month on maintenance. Mr. Reid further testified that currently post-petition Omni spends $8,000.00 to $10,000.00. The post-petition maintenance figures are significantly less than the pre-petition figures.

Based on the foregoing, this Court finds that no additional adequate protection payments shall be required to be paid by Omni at this time to compensate the Couringtons for any alleged dimunition in value of the equipment. It is clear, however, that maintenance of the equipment is necessary both to preserve its usefulness to Omni and to preserve its value to the Couringtons. As a result, in addition to the adequate protection previously ordered by this Court, this Court is satisfied that proper maintenance *and* proof of insurance on the equipment shall be required as part of the adequate protection for the Couringtons. Furthermore, Omni shall expend a minimum of $15,000.00 for maintenance per month and keep records of the same in order to maintain the level of maintenance performed by Omni pre-petition. Adequate protection shall also include regular monthly inspection of the equipment at pre-determined times by a representative of the Couringtons in order to provide the Couringtons with a method of verifying that maintenance on the equipment is being properly performed. These periodic monthly inspections shall not interfere with the commer-

cial operations of Omni. The adequate protection fashioned above is without prejudice to additional relief to the Couringtons if the equipment is not properly maintained as ordered by this Court.

At the hearing on January 24, 1987, this Court granted partial relief from the automatic stay, subject to a written order to be entered, and the order was entered on February 2, 1987. The order provided that the automatic stay of § 362 shall remain in effect until further order of this Court. At this time, the Court finds that no further relief from the automatic stay is warranted as to equipment listed on Exhibit #10.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that Gerald Courington and Louise Courington's Third Motion for Adequate Protection or for Relief From Stay be, and the same is hereby, granted in part and denied in part. It is further

ORDERED, ADJUDGED AND DE-CREED that the Motion as it pertains to relief from stay be, and the same is hereby, denied as to all equipment not covered by this Court's previous order entered on February 2, 1987. It is further

ORDERED, ADJUDGED AND DE-CREED that the Motion as it pertains to adequate protection be, and the same is hereby, granted and the same is fashioned as follows:

(1) proof of insurance on all equipment covered by Courington's security interest;

(2) minimum monthly maintenance on the equipment in the amount of $15,000.00 together with records of the same; and

(3) periodic monthly inspection of the equipment by a representative of the Couringtons at pre-determined times in order to ensure that proper maintenance is being performed by Omni.